**FOAMADE INDUSTRIES, INC., Appellant,**

**v.**

**LOUISVILLE TIMBER & WOODEN PRODUCTS COMPANY, Appellee.**

Court of Appeals of Kentucky.

Oct. 24, 1969.

Rehearing Denied Feb. 20, 1970.

Irwin G. Waterman, Allan Weiss, Louisville, for appellant.

Oldham Clarke, James Cuneo, Frank Thiemann, Jr., Louisville, for appellee.

DAVIS, Commissioner.

Foamade Industries, Inc., sued Louisville Timber & Wooden Products Company, seeking recovery of the contract price of $14,674.40 which Louisville Timber had agreed to pay Foamade for 153 polyurethane blocks. Louisville Timber denied liability on the ground that the blocks furnished failed to meet specifications and asserted its counterclaim for $12,000 based on alleged breach of warranty. After certain discovery depositions were filed, each of the parties made motion for summary judgment. The trial court sustained the motion of Louisville Timber for summary judgment and assigned the case for hearing by a jury for determination of the amount of damages due Louisville Timber. A jury awarded $7,771 to Louisville Timber, and judgment went accordingly. This appeal seeks reversal of that judgment.

Louisville Timber placed its order with Foamade on February 26, 1962, for the blocks according to a quotation which Foamade had made. The quotation for the material which was accepted by Louisville Timber contained the following representation:

"Material—Polyurethane Foam Per O. S. 9453 Amend. 2 Table III. Laminated with 3M Adhesive EC 1357.

Tolerance—Length and Width plus or minus .200"—Thickness plus .100" "

It was developed in evidence that the reference pertained to Ordinance Specification 9453, Amendment 2, Table III. Louisville Timber had contracted to furnish merchandise to the Naval Ordnance Plant at Louisville meeting the provisions of O.S. 9453, Amendment 2, Table III. Foamade was familiar with the provisions of O.S. 9453, inasmuch as it had quoted

another firm on the same contract dealing with the same specifications.

Foamade made arrangements to acquire the raw material from American Rubber and Plastic Company of La Porte, Indiana, and apparently was informed by American Rubber that the material to be furnished would comply with the specifications.

Foamade experienced difficulty in obtaining the material as promptly as desired by it and Louisville Timber, and several interchanges by telephone and mail passed between Foamade and Louisville Timber looking toward expediting delivery.

On March 28, 1962, Foamade's president, Morris Rochlin, telephoned to Louisville Timber and talked with Edgar Wise who was then temporarily in charge of the affairs of Louisville Timber while R. W. Marshall, president of Louisville Timber, was out of the city. Rochlin testified that he advised Wise that American Rubber was having difficulty in compounding the material so as to meet the specifications and that a change in specifications would be required before "foaming" the material. On that date a telegram was dispatched from Louisville Timber to Foamade reading: "Regarding your order 4038 stress and strain tolerance is plus ten minus fifty and reference to figure eight is for maximum limits only." On that same day a letter was sent from Foamade to Louisville Timber reciting:

"We wish to confirm our telephone conversation of this afternoon regarding Amendment 2 of Specification OS9453.

"We are proceeding with the production of this material on the basis of your advising us as follows:

'paragraph 3.11(a) and figure 8 and load tracing curve shown on Amendment 2 with an allowable variation in stress of plus 10% and minus 50%.'

"For example, our stress on a loading deflection of 20% will measure .7psi."

Foamade shipped the blocks to Louisville Timber in six separate consignments, the first of which was on April 20 and the last on May 10, 1962. A letter was directed to Louisville Timber from Foamade in connection with each of these shipments in which it was "certified" that the blocks met all requirements of Amendment 2, O.S. 9453, Table III, dated July 19, 1961.

Louisville Timber proceeded to process some of the blocks and delivered them to Naval Ordnance, but Naval Ordnance rejected them as failing to meet the specifications. Finally, by letter dated June 18, 1962, Louisville Timber advised Foamade as follows:

"This is to inform you that Polyurethane foam pads furnished to us per your quotation No. 1874, dated 2–22–62 and our order number 1842 to you dated 2–26-62 have been rejected by the Navy.

"The test results you submitted did not comply with the specifications due to your error and negligence.

"We have been damaged to a considerable extent. We will advise you the extent which we have been damaged and will expect you to settle promptly."

Foamade contends that the materials shipped by it to Louisville Timber complied with the requirements specified in O.S. 9453 *as amended* pursuant to the terms of the telegram and letter of March 28. Louisville Timber offered no proof respecting the deficiency of the material other than a report which it had received from Naval Ordnance indicating that the material failed to comply with the stress-strain requirements of Paragraph 3.11(a) and Figure 8 of the stated specifications.

In this state of case, it appears that there was a genuine issue of material fact as to whether Foamade and Louisville Timber had effectively amended the terms of the sale pertaining to the specifications by the telegram and letter arising out of the telephone call of March 28. No question was raised as to the legality of so amending the original contract. The only ques-

**416**

tion about it was the factual one as to whether there had been such an amendment. As noted in 17 Am.Jur.2d, Contracts, Section 461, page 927:

"So, the mutual agreement of the parties to a bilateral executory contract, before a breach thereof, to abrogate and discharge it and to substitute in its stead a new contract conferring new advantages or imposing new burdens on both constitutes a sufficient consideration to support the substituted contract."

In any event, there is not presented by the record before us any legal attack on the efficacy of the alleged amendment of the specifications. In the state of the record as presented to the trial court and now on review, there is a genuine issue of material fact as to whether the sales contract was amended and whether the merchandise delivered by Foamade complied with the specifications as amended. It follows that the court erred in granting summary judgment. CR 56.03; Isaacs v. Cox, Ky., 431 S.W.2d 494; 12 Kentucky Digest, Judgment, ⊛181.

The view we have of the case makes it unnecessary to deal in detail with other asserted errors as respects the measure of damages and the sufficiency of proof. It is appropriate to point out that if the evidence at another trial is substantially in accord with the fragmentary evidence presented upon the discovery depositions, it may be necessary for the trial court to determine the applicability of the provisions of KRS 355.2–711 and 355.2–712 pertaining to the measure of damages applicable when the buyer has "covered" by making a good-faith purchase of goods in substitution of the goods provided in the original sales contract.

We express no opinion as to any phase of this controversy except to the extent of our holding that summary judgment was inappropriate.

The judgment is reversed for proceedings consistent with the opinion.

All concur.